UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EISHO SUZUKI,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF CONTRA COSTA, *et al*.,<br><br>    Defendants. | Case No. 18-cv-06963-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 20 |

On May 3, 2019, the Court held a hearing on defendants' motion to dismiss the first amended complaint ("FAC"). For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART. The Court GRANTS plaintiff leave to amend. If plaintiff wishes to amend the complaint, he must do so by **June 7, 2019**. The Court schedules a case management conference for **June 14, 2019 at 2:30 p.m.**

## BACKGROUND

On November 16, 2018, plaintiff Eisho Suzuki filed this lawsuit pursuant to 42 U.S.C. § 1983 against the County of Contra Costa, Suzanne Porter, and Does 1-10, alleging violations of his constitutional rights. Porter was employed by the County as a Children and Family Services ("CFS") social worker. Plaintiff alleges that Porter lied and fabricated evidence in connection with an investigation that Porter conducted into claims of spousal and child abuse made by plaintiff's then-wife, Roxanne Suzuki,[1] and that as a result, plaintiff lost custody of his children from

---

[1] The FAC refers to plaintiff's ex-wife as Roxanne Suzuki. Defendants state that they "understand that she prefers" her maiden name and that for ease of reference defendants refer to plaintiff's ex-wife as "Roxanne." The Court does the same.

November 2016 until May 2018. Plaintiff alleges that Porter was unfit to be employed as a social worker and that the County was deliberately indifferent to the risks that she posed in hiring her.

The FAC alleges the following about Porter and her background. On May 31, 2012, the Superior Court of California, Contra Costa County issued a domestic violence restraining order ("DVRO") against Porter for four acts of domestic violence against her ex-husband Arda Aksu. FAC, Ex. A (DVRO) (Dkt. No. 16-1). The Superior Court found that Porter committed domestic violence under California Family Code §§ 6203 and 6211 by: (1) physically abusing Aksu on June 8, 2009 and July 10, 2009; (2) violating a mutual non-CLETS restraining order on October 13, 2010, by jumping a fence adjacent to Aksu's house late at night; and (3) setting up Aksu in a "Dirty DUI" sting operation in which she arranged to have Aksu arrested for driving under the influence so Porter could get greater custody of their child. *Id.* at 3-10. The FAC contains detailed allegations about the "Dirty DUI" scandal, FAC at ¶¶ 9-25 & FAC, Ex. E ("Disgraced CPS Worker Ousted: Contra Costa County Fails to Fix Lives She Unnecessarily Destroyed") (Dkt. No. 16-5).[2] The DVRO against Porter was in effect for three years until May 31, 2015. *Id.* at 23-29.

On August 13, 2012, Aksu filed a complaint against Porter, the County, and several other defendants alleging that his civil rights were violated as a result of the entrapment scheme. FAC ¶ 32(l). *See Aksu v. County of Contra Costa et al.*, Case No. 3:12-cv-04268 CRB (N.D. Cal.).[3]

In November 2014, the County hired Porter as a Child and Family Services social worker. FAC ¶ 31. The FAC alleges that at the time the County hired Porter, the DVRO against her was in effect and Aksu's lawsuit against Porter and County was pending, and thus the County knew or

---

[2] According to the May 31, 2012 DVRO, following the issuance of the [temporary restraining order], Ms. Porter "helped initiate and sponsor a series of deceitful acts by a private investigator designed to cause the arrest of Mr. Aksu for drunk driving." FAC, Ex. A at 8. The DVRO discusses the scheme and Porter's role. *Id*. at 8-10. The state court noted evidence that Porter had "expressed a strong desire to have Mr. Aksu arrested for drunk driving because he would drink and drive with her child in the car," and the court found that "[t]he whole point of the violation of the [temporary restraining order] was to induce Mr. Aksu into a drunken driving offense so as to give Ms. Porter a significant tactical advantage in her on-going child custody conflicts with Mr. Aksu." *Id*. at 8, 11.

[3] The Court *sua sponte* takes judicial notice of this case, *Aksu v. County of Contra Costa et al.*, Case No. 3:12-cv-04268 CRB (N.D. Cal.). The public docket shows that the case was settled with Porter in July 2015 and with the County in October 2015.

should have known about the DVRO as well as Porter's involvement in the "Dirty DUI" scandal. *Id.* at ¶¶ 32(a)-(l). The FAC alleges that the County knew or should have known that Porter was unfit to be a CFS social worker and to make determinations whether abuse was substantiated against parents in custody battles. *Id.*

On December 4, 2015, plaintiff filed for divorce from Roxanne. *Id.* at ¶ 34. Plaintiff and Roxanne have three biological children together and Roxanne has a child from her first marriage whom plaintiff adopted. *Id.* at ¶¶ 33, 35. Plaintiff and Roxanne shared 50/50 joint custody of the four children from December 4, 2015 until November 18, 2016. *Id.* at ¶¶ 33, 39.

On August 31, 2015, "a referral was made"[4] to CFS accusing plaintiff of abusing the children. *Id.* at ¶ 36. CFS social worker Ade Gobir investigated the matter and determined that the alleged child abuse by plaintiff was unfounded. *Id*. On April 6, 2016 and May 24, 2016, two more referrals were made to CFS accusing plaintiff of abusing the four children. *Id.* at ¶ 37. Porter was assigned to investigate these allegations and she prepared two reports dated May 24, 2016 and July 1, 2016, determining that the allegations were unfounded. *Id.* The FAC alleges that "[d]uring this time period, Plaintiff EISHO SUZUKI believed that Defendant SUZANNE PORTER was grossly biased against him with her investigation, but could not prove his suspicions." *Id.*

On October 14, 2016, a fourth referral was made to CFS accusing plaintiff of abusing his four children, and Porter was assigned to investigate. *Id.* at ¶ 38. On November 18, 2016, while the fourth referral was pending, Roxanne filed for a DVRO against plaintiff. *Id.* at ¶ 39. In the request for the DVRO, Roxanne stated,

> I am fearful that the children and I may suffer irreparable harm by the Petitioner [Suzuki] if immediate orders are not granted. CFS investigator SUZY PORTER stated I must request that our children be removed from Petitioner's care. A CFS report is supposed to follow but I do not know if/when that will occur. However this cannot wait as the [sic] me and the children are in danger.

Baker Decl., Ex. A at A-021 (Dkt. No. 20-2).[5] Roxanne stated that "Suzy Porter has warned me

---

[4] The FAC does not state who made the referral. However, based upon statements in Roxanne's November 2016 request for a DVRO, it appears that Roxanne initiated this referral and the subsequent referrals.

[5] Defendants request judicial notice of various state court orders and documents from plaintiff's family court proceedings. Plaintiff does not object. The court orders and other documents

3

that if I did not take action to protect the children (over and above anxiously awaiting the results of our custody evaluation) that there is a great possibility that I would be found neglectful and the children could end up in the Juvenile Court system." *Id*. Roxanne also stated that "[t]hrough the CFS investigation I was just made aware that the Petitioner had a DUI in 2012 and had a suspended license which I had no idea had occurred [and] [a]pparently he continued to drive the children with a suspended license." *Id*. at A-023. Roxanne also claimed that plaintiff drove the children while intoxicated, and that he committed numerous other acts of child and spousal abuse. *Id*. at A-021 to A-025. The same day, the state court issued a Temporary Restraining Order ("TRO") that temporarily granted Roxanne legal and physical custody of the children and prohibited plaintiff from having contact with the children until December 6, 2016, the date scheduled for a hearing regarding Roxanne's request for a DVRO.

Plaintiff alleges that he has never been convicted of a DUI, that his license has never been suspended, and that he has never driven the children while intoxicated. FAC ¶¶ 40-41. Plaintiff alleges that Porter lied to Roxanne about him having a DUI and a suspended license, lied about him driving the children while intoxicated, and that Porter fabricated evidence showing that he had a DUI and a suspended license. *Id.* at ¶ 39. As support for this allegation, plaintiff cites deposition testimony that Porter and Roxanne provided in the state family court litigation, which is attached as exhibits to the FAC. Roxanne testified that Porter informed her that plaintiff had a DUI and that his license was suspended, and that she was "presented" with a document (presumably by Porter) showing that plaintiff had a DUI and that his license was suspended. Dkt. No. 16-2 at 408-09 (Roxanne's Depo.). Porter testified that she told Roxanne that she "found a DUI on the police reports" but did not know whether plaintiff actually had a DUI because the reports were confusing, and that she asked Roxanne "if she was aware that he ever had a DUI" because Porter was "concerned if she was letting him drive in the car with them while he was drinking." Dkt. No. 16-3 at 157, 258 (Porter's Depo.).

On November 28, 2016, Porter met with plaintiff and his aunt, Linda Haley. FAC at ¶ 42.

are referenced in the FAC and the Court finds it appropriate to GRANT defendants' request for judicial notice.

4

The FAC alleges that at this meeting, Porter informed plaintiff that she "was planning to substantiate abuse" against plaintiff's adopted child and Porter threatened plaintiff not to challenge her findings or "things will get worse." *Id.* Plaintiff alleges that on November 30, 2016, Porter prepared an investigation report that found that plaintiff abused his adopted child but not his biological children. *Id.* at ¶ 43. The FAC alleges that "after being informed that [plaintiff] was challenging her findings that he abused his one (1) adopted child, [Porter] made good on her threat that 'things will get worse' for [plaintiff]." *Id.* at ¶ 44. "Specifically, on February 6, 2017, [Porter] amended her investigation report, dated November 30, 2016, to now substantiate abuse against [plaintiff] for all three (3) of his minor biological children as well." *Id.* After plaintiff received Porter's amended report, which was now dated February 6, 2017, he filed for a grievance hearing with CFS to challenge Porter's findings. *Id.* at ¶ 46. The grievance hearing was scheduled for September 22, 2017. *Id.* at ¶ 49.

Meanwhile, on December 6, 2016, the Contra Costa County Superior Court granted plaintiff's request for a continuance of the hearing on the request for the DVRO to allow plaintiff time to conduct discovery and prepare for the hearing. Dkt. No. 20-3 (State Court Order on Request to Continue Hearing). The court scheduled the hearings for March 9 and March 10, 2017.[6] *Id.* Additionally, the court ordered that the November 18, 2016 TRO would remain in effect until the end of the DVRO evidentiary hearings. *Id.* While the original TRO prohibited plaintiff from having any contact with his children, the December 2, 2016 order modified the TRO to grant plaintiff two hours a week of professionally supervised visitation with his children. *Id.*

The FAC alleges that on March 16, 2017, Porter's "corrupt and violent past was exposed by Daniel Borenstein in the *East Bay Times* in an article entitled 'County Hired Social Worker With Domestic Violence History.'" FAC at ¶ 47. The FAC includes a link to the article, https://www.mercurynews.com/2017/03/16/borenstein-county-hired-social-worker-with-domestic-violencehistory/. *Id.* By April 4, 2017, Porter was no longer employed by the County. *Id.* at ¶ 48.

The FAC alleges that on September 14, 2017, one week before the scheduled grievance

---

[6] The evidentiary hearings were ultimately held on March 9, March 10, March 21, April 28, June 13, and October 16, 2017. Dkt. No. 16-4 at 5 (Transcript of Superior Court Proceedings).

hearing with CFS, the County reversed Porter's abuse findings against plaintiff as to all of the children. *Id.* at ¶ 50. The FAC also alleges that the County mailed a letter to plaintiff stating that all abuse is no longer substantiated against him "due to a change in the state of the evidence and unavailability of witnesses." *Id.*

On October 18, 2017, after multiple days of evidentiary hearings on Roxanne's DVRO request, the court ordered that a permanent DVRO be issued and remain in effect against plaintiff until May 18, 2018. FAC, Ex. D at 11 (Transcript) (Dkt. No. 16-4 ). The DVRO limited plaintiff to two three-hour visits per week with his biological children and no visits with his adopted son. *See* Baker Decl., Ex. E (Oct. 18, 2017 Minute Order) (Dkt. No. 20-6). According to the court transcript, the court "found that there is enough to issue a restraining order, because even if it was nothing but that swimming-pool incident,[7] that you were clearly, I mean, the description is it was out of control. You were drunk, you were irritating – it was described as extremely awkward by one of the witnesses. You were disturbing [Roxanne's] peace." Dkt. No. 16-4 at 10:21-11:2. The

---

[7] The following description of the "swimming pool incident" is taken from the Court of Appeal's decision affirming the trial court:

> Sometime in the spring of 2016, one of the Suzuki children was competing in a swim meet. Jeanine Dias, a friend of the Suzukis, and one of the third parties on whose testimony the trial court specifically relied, was present and testified that Eisho arrived after the rest of the family, carrying a beer. He was "pushy" towards Roxanne, following her around and demanding that she pay attention to him. He said, "Kiss me, Roxanne" and told the children, "Tell her to kiss me." Dias reported that the children wanted Roxanne "to just do it," which she did, "[v]ery quickly." Dias said, "It was an awkward day." After the meet, the Suzuki family went to a birthday party for Dias's grandson at a restaurant. Dias testified that Eisho did not appear drunk at the swim meet, but seemed drunk at the party.
>
> The child competing in the swim meet testified that Eisho arrived at the meet with a beer in his hand and one or two in his back pockets. He testified that Eisho caused a scene by telling Roxanne, "Kiss me now," and then raising his voice. When they arrived at the restaurant for the party, Eisho got out of the car and threw a bottle on the ground, where it shattered.
>
> Roxanne testified that Eisho arrived late at the swim meet with at least two beers, drank beer at the meet, and asked her to kiss him "a lot." He was yelling, she and the children were embarrassed, and she tried to pacify him. She testified that Eisho acted very drunk at the party later that day, "being obnoxious," and yelling and following her around. She said she tried to avoid him without making a scene.

FAC, Ex. F at 4-5 (Dkt. No. 20-7).

6

1    court did not find that plaintiff abused the children, and the court did not address Roxanne's

2    allegations that plaintiff had a DUI or a suspended license. *See id.* at 9-10.

3         On February 25, 2019, the Court of Appeal of the State of California, First Appellate District

4    affirmed the issuance of the DVRO against plaintiff. FAC, Ex. F (Dkt. No. 20-7). According to the

5    Court of Appeal, the trial court did not abuse its discretion, and that "the evidence supports a

6    conclusion that by harassing and pursuing Roxanne at the swim meet and the following party,

7    [plaintiff] engaged in conduct that justifies the imposition of a restraining order." *Id.* at 6.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. Pro. 8(a)(2), and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

7

As a general rule, the court may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). However, the court may take judicial notice of some public records, including the 'records and reports of administrative bodies.'" *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (citing *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)). The court may not take judicial notice of facts in the public record that are subject to reasonable dispute. *Lee*, 250 F.3d at 690.

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

The FAC alleges three causes of action: (1) violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C § 1983 against the County and Does 1 through 10 for the "unconstitutional hiring" of Porter; (2) violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. §§ 1983 & 1986 against the County and Does 1 through 10 based on numerous customs and practices, including the hiring of Porter; and (3) violation of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against the County, Porter, and Does 1 through 10, based on Porter's fabrication of evidence and defendants' interference with plaintiff's rights to familial association with his children.

Defendants move to dismiss all of plaintiff's claims. Before turning to the parties' specific arguments regarding each claim, the Court notes the following. Plaintiff has named the County as a defendant in each of the three causes of action, and alleges under each cause of action that the County is liable for hiring Porter. As set forth below, the Court concludes that plaintiff has stated a claim against the County for hiring Porter. The Court will grant plaintiff leave to amend if plaintiff wishes to allege additional theories of liability against the County, such as based on other policies or customs. However, in the interest of clarity, any amended complaint shall set forth the claims

against the County under a single cause of action, rather than multiple causes of action containing similar allegations.

In addition, plaintiff alleges that defendants have violated his Fourth and Fourteenth Amendment rights. As set forth below, the Court concludes that plaintiff has sufficiently alleged a violation of his Fourteenth Amendment rights based on his claims that Porter lied and fabricated evidence about plaintiff having a DUI and a suspended license, as well as a Fourteenth Amendment violation of his right to familial association. However, based upon the Court's research, the cases analyzing Fourth Amendment violations in the context of child custody and child abuse proceedings involve situations where children have been removed from their parents and placed into state custody. *See e.g.*, *Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018). If plaintiff wishes to pursue a Fourth Amendment claim in the amended complaint, plaintiff must provide authority for the proposition that the Fourth Amendment is applicable here.

Finally, the second cause of action is brought pursuant to 42 U.S.C. §§ 1983 and 1986. However, "§ 1986 provides a cause of action against '[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 . . . are about to be committed, and having power to prevent or aid . . . neglects or refuses to do so.' Hence, there can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985." *Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984). The FAC does not allege a conspiracy claim under section 1985, and therefore plaintiff may not bring a claim under section 1986.

## I. Violation of Fourteenth and Fourth Amendment Rights by Porter and County (Third Cause of Action)[8]

Plaintiff alleges that Porter and the County violated his rights under the Fourth and Fourteenth Amendments. The FAC alleges that "a reasonable social worker in SUZANNE PORTER's situation would know that there is a clearly established due process right not to be

---

[8] The Court analyzes the third cause of action first because that is the only claim alleged against Porter, and whether plaintiff can state a claim against the County depends, in part, on whether plaintiff has stated a claim against Porter for a violation of his constitutional rights.

9

subjected to false accusations on the basis of false evidence that was deliberately fabricated by the government such that a reasonable social worker in SUZANNE PORTER's situation would know that it is unlawful to lie, fabricate evidence, alter reports, attempt to coerce Plaintiff EISHO SUZUKI into not contesting her findings, coerce Roxanne Suzuki into filing a DVRO against Plaintiff based on false evidence and other corrupt practices." FAC ¶ 71.[9]

Defendants argue that the state court orders "establish that the state court, not the County or Ms. Porter, limited Plaintiff's parental rights" and therefore plaintiff cannot show that he lost his parental rights as a result of unconstitutional actions by the County or Porter. Motion at 1 (Dkt. No. 20). Defendants also argue that plaintiff cannot collaterally attack the state court orders limiting his parental rights, and defendants emphasize the fact that ultimately the state trial court limited plaintiff's parental rights based on the "swimming pool incident," and the California Court of Appeal affirmed that decision.

In response, plaintiff's opposition frames his claim against Porter as one for "judicial deception," and he contends that Porter violated his constitutional rights by, *inter alia*, fabricating evidence and lying to Roxanne in connection with "coercing" Roxanne to request the DVRO. Defendants contend that plaintiff cannot state a claim for judicial deception against Porter because "the FAC does not contain any factual allegations regarding any false statements made by Ms. Porter to Judge Cope in order to obtain an order, only statements allegedly made by Ms. Porter to [Roxanne]." Dkt. No. 23 at 6 (Defendants' Reply Brief). Defendants also argue that Porter has absolute immunity for any testimony that she provided in the state court, and that Porter's amended February 2017 report could not have had any bearing on the November and December 2016 DVROs or the October 2017 DVRO.

The Court concludes that plaintiff has stated a claim against Porter for a violation of his Fourteenth Amendment rights. "The Fourteenth Amendment prohibits the deliberate fabrication of evidence by a state official." *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017); *see also Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010) ("[A]n interviewer

---

[9] Plaintiff's allegations against the County in the first cause of action are duplicative of the allegations contained in the second and third causes of action and are addressed *infra*.

who deliberating mischaracterizes witness statements in her investigative report . . . commits a constitutional violation." "[T]o prevail on a claim of judicial deception in a child abuse or custody proceeding, a plaintiff must show that '(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty.'" *Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018) (quoting *Spencer*, 857 F.3d at 798). "To establish the second element of causation, the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question." *Id*.

Further, social workers are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit they signed under penalty of perjury because such actions are not similar to discretionary decisions about whether to prosecute. *See Hardwick v. Vreeken*, 844 F.3d 1112, 1116 (9th Cir. 2017) (affirming denial of absolute immunity because alleged false actions complained of involved conduct outside quasi-prosecutorial advocates); *Beltran v. Santa Clara County*, 514 F.3d 906, 908 (9th Cir. 2008) (en banc) (reversing district court's finding of absolute immunity for social worker's investigatory conduct); *Costanich*, 627 F.3d at 1109 (affirming district court's finding of no absolute immunity for social worker's investigating charges against foster parent and filing declaration in support of guardianship termination proceedings);

Here, plaintiff has alleged that Porter deliberately fabricated evidence and showed that evidence to Roxanne in connection with directing Roxanne that she must request a DVRO. Plaintiff also alleges that Porter amended her report to falsely substantiate charges of abuse against plaintiff in retaliation for plaintiff challenging her findings. On this record, the Court finds that the pleadings are sufficient to state a claim. Defendants raise a number of arguments about the lack of causation that the Court cannot resolve without a fuller factual record. However, the Court does find as a matter of law that the state trial court's October 18, 2017 order establishes that from that point onward, plaintiff's parental rights were limited due to the "swimming pool incident," and not because of anything Porter is alleged to have done. Thus, plaintiff may pursue his claim against

11

Porter (and his related claim against the County for the hiring of Porter) for violations of his constitutional rights until October 18, 2017.

## II. Unconstitutional Hiring (First Cause of Action)

Plaintiff alleges a claim for "unconstitutional hiring" against the County. Plaintiff alleges that the County "disregarded a known and obvious consequence of hiring" Porter and "failed to adequately scrutinize" Porter's background prior to hiring her. FAC at ¶ 61.

Defendants contend that this claim fails because plaintiff has not alleged an underlying constitutional violation by Porter. For the reasons set forth above, the Court disagrees. Defendants also contend that plaintiff's allegations are conclusory and that plaintiff has not alleged any facts in support of the claim that the County's "unconstitutional hiring" of Porter harmed plaintiff.

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). "[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691. To impose municipal liability under § 1983 for a violation of constitutional rights resulting from governmental inaction or omission, a plaintiff must show: "(1) that he possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks omitted).

The Supreme Court has held that in the limited circumstances where there is a direct link between a policymaker's hiring decision and the constitutional injury, a single hiring decision can be sufficient to trigger municipal liability:

> A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third

12

> party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

*Brown*, 520 U.S. at 411.

The Court concludes that plaintiff has alleged such a link. Plaintiff alleges that at the time the County hired Porter, a DVRO was in effect against Porter for committing numerous acts of domestic violence against her ex-husband, including setting him up to be arrested for a DUI in order to gain greater custody of their child. Plaintiff alleges that if the County had conducted an adequate screening, the County would have learned about Porter's DVRO (which recounts, *inter alia*, numerous instances of Porter lying) and her involvement in the "Dirty DUI" scandal. Plaintiff alleges that Porter lied to Roxanne about plaintiff having a DUI and a suspended license, and that Porter fabricated evidence about those matters. The Court finds that this is a sufficiently close link between the alleged inadequate screening and the constitutional injury to state a claim against the County.

### III. Other bases of *Monell* liability (Second Cause of Action)

Plaintiff's second cause of action against the County alleges "on information and belief" that the County: (a) had a "custom of using trickery, duress, fabrication and/or false testimony and/or evidence" and failed to disclose exculpatory evidence "in preparing and presenting reports and court documents to the Court;" (b) implemented a policy of "inadequate training, and/or by failing to train its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals . . when performing actions related to child abuse and domestic violence proceedings;" (c) implemented a policy of "inadequate supervision, and/or by failing to train its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals . . when performing actions related to child abuse and domestic violence proceedings;" (d) implemented a policy of "inadequate hiring, and/or by failing to train its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals . . when performing actions related to child abuse and domestic violence proceedings;" and (e) had a policy of "making false allegations in investigative reports . . . when there is no evidentiary basis to support the charge" and "deliberately failed to ameliorate the problem through

the promulgation of polices to regulate the conduct of its social workers." FAC at ¶¶ 65(a)-(e). Plaintiff alleges that these policies were the moving force behind the violation of his constitutional rights.

Defendants contend that plaintiff's allegations are conclusory. With the exception of plaintiff's claims regarding the County's hiring of Porter discussed *supra*, the Court agrees. Plaintiff has essentially reframed his allegations about Porter's specific actions – such as fabricating evidence and making false allegations in investigative reports – and cast them as "policies" and "customs." However, the Ninth Circuit has held that "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also Rivera v. County of Los Angeles*, 745 F.3d 384, 398 (9th Cir. 2014); *McDade v. West*, 223 F. 3d 1135, 1142 (9th Cir. 2000). In addition, a local government's liability under § 1983 is at "its most tenuous," when the claim is based on a failure to train. *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Accordingly, the Court DISMISSES this claim with leave to amend. If plaintiff wishes to pursue any basis of municipal liability beyond the hiring of Porter, plaintiff must be able to allege customs, policies, or practices that are "of sufficient duration, frequency and consistency to constitute an actionable policy or custom." *Trevino*, 99 F.3d at 920.

**CONCLUSION**

For the foregoing reasons, defendants' motion is GRANTED in part and DENIED in part with leave to amend. If plaintiff files an amended complaint, plaintiff must follow the Court's instructions as follows: (1) any Fourth Amendment claims must be supported by authority showing that the Fourth Amendment applies in this context; (2) all claims against the County must be brought under a single cause of action; (3) plaintiff may not bring a claim under 42 U.S.C. § 1986; and (4) if plaintiff wishes to pursue *Monell* claims beyond the City's hiring of Porter, plaintiff must allege customs, policies or practices of sufficient duration, frequency and consistency and not simply based

14

on Porter's own actions.

**IT IS SO ORDERED**.

Dated: May 24, 2019

_____
SUSAN ILLSTON
United States District Judge