UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EISHO SUZUKI,<br><br>   Plaintiff,<br><br>  v.<br><br>COUNTY OF CONTRA COSTA, et al.,<br><br>   Defendants. | Case No. 18-cv-06963-SI<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. Nos. 38 |

Before the Court is defendants' motion for judgment on the pleadings with respect to plaintiff's first amended complaint ("FAC"). Defendants argue plaintiff has failed to allege facts necessary to state a claim under 42 U.S.C. § 1983 for violation of plaintiff's Fourteenth Amendment rights. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and VACATES the hearing set for August 9, 2019. For the reasons set forth below, the motion is DENIED.

**BACKGROUND**

On November 16, plaintiff Eisho Suzuki filed this lawsuit pursuant to 42 U.S.C. § 1983 against the County of Contra Costa, Suzanne Porter, and Does 1-10, alleging violations of his constitutional rights. Ms. Porter was employed by the County as a Children and Family Services ("CFS") social worker. Plaintiff alleges Ms. Porter lied and fabricated evidence in connection with an investigation that Ms. Porter conducted into claims of spousal and child abuse made by plaintiff's then-wife, Roxanne Suzuki,[1] and that as a result, plaintiff lost custody of his children from

---

[1] The FAC refers to plaintiff's ex-wife as Roxanne Suzuki. Defendants state that they "understand that she prefers" her maiden name and that for ease of reference defendants refer to plaintiff's ex-wife as "Roxanne." The Court does the same.

November 2016 until May 2019. Plaintiff alleges Ms. Porter was unfit to be employed as a social worker and the County was deliberately indifferent to the risks that she posed in hiring her.

The FAC alleges the following about Ms. Porter and her background. On May 31, 2012, the Superior Court of California, Contra Costa County issued a domestic violence restraining order ("DVRO") against Ms. Porter for four acts of domestic violence against her ex-husband Arda Aksu. FAC, Ex. A (DVRO) (Dkt. No. 16-1). The Superior Court found Ms. Porter committed domestic violence under California Family Code §§ 6203 and 6211 by: (1) physically abusing Aksu on June 8, 2009 and July 10, 2009; (2) violating a mutual non-CLETS restraining order on October 13, 2010, by jumping a fence adjacent to Aksu's house late at night; and (3) setting up Aksu in a "Dirty DUI" sting operation in which she arranged to have Aksu arrested for driving under the influence so Ms. Porter could get greater custody of their child. *Id.* at 3-10. The FAC contains detailed allegations about the "Dirty DUI" scandal. FAC at ¶¶ 9-25 & FAC, Ex. E ("Disgraced CPS Worker Ousted: Contra Costa County Fails to Fix Lives She Unnecessarily Destroyed") (Dkt. No. 16-5).[2] The DVRO against Ms. Porter was in effect for three years until May 31, 2015. *Id.* at 23-29.

On August 13, 2012, Aksu filed a complaint against Ms. Porter, the County, and several other defendants alleging that his civil rights were violated as a result of the entrapment scheme. FAC ¶ 32(1). *See Aksu v. County of Contra Costa et al.*, Case No. 3:12-dv-04268 CRB (N.D. Cal.).[3]

In November 2014, the County hired Ms. Porter as a Child and Family Services social worker. FAC ¶ 31. The FAC alleges that at the time the County hired Ms. Porter, the DVRO against her was in effect and Aksu's lawsuit against Ms. Porter and County was pending, and thus the

---

[2] According to the May 31, 2012 DVRO, following the issuance of the [temporary restraining order], Ms. Porter "helped initiate and sponsor a series of deceitful acts by a private investigator designed to cause the arrest of Mr. Aksu for drunk driving." FAC, Ex. A at 8. Th DVRO discusses the scheme and Ms. Porter's role. *Id.* at 8-10. The state court noted evidence that Ms. Porter had "expressed a strong desire to have Mr. Aksu arrested for drunk driving because he would drink and drive with their child in the car," and the court found that "[t]he whole point of the violation of the [temporary restraining order] was to induce Mr. Aksu into a drunken driving offense so as to give Ms. Porter a significant tactical advantage in her on-going child custody conflicts with Mr. Aksu." *Id.* at 8, 11.

[3] The Court *sua sponte* takes judicial notice of this case, *Aksu v. County of Contra Costa et al.*, Case No. 3:12-cv-04268 CRB (N.D. Cal.). The public docket shows that the case was settled with Ms. Porter in July 2015 and with the County in October 2015.

County knew or should have known about the DVRO as well as Ms. Porter's involvement in the "Dirty DUI" scandal. *Id.* at ¶¶ 32(a)-(1). The FAC alleges that the County knew or should have known that Ms. Porter was unfit to be a CFS social worker and to make determination whether abuse was substantiated against parents in custody battles. *Id.*

On December 4, 2015, plaintiff filed for divorce from Roxanne. *Id.* at ¶ 34. Plaintiff and Roxanne have three biological children together and Roxanne has a child from her first marriage whom plaintiff adopted. *Id.* at ¶¶ 33, 35. Plaintiff and Roxanne shared 50/50 joint custody of the four children from December 4, 2015 until November 18, 2016. *Id.* at ¶¶ 33, 39.

On August 31, 2015, "a referral was made"[4] to CFS accusing plaintiff of abusing the children. *Id.* at ¶ 36. CFS social worker Ade Gobir investigated the matter and determined that the alleged child abuse by plaintiff was unfounded. *Id.* On April 6, 2016 and May 24, 2016, two more referrals were made to CFS accusing plaintiff of abusing the four children. *Id.* at ¶ 37. Ms. Porter was assigned to investigate these allegations and she prepared two reports dated May 24, 2016 and July 1, 2016, determining that the allegations were unfounded. *Id.* The FAC alleges that "[d]uring this time period, Plaintiff EISHO SUZUKI believe that Defendant SUZANNE PORTER was grossly biased against him with her investigation, but could not prove his suspicions." *Id.*

On October 14, 2016, a fourth referral was made to CFS accusing plaintiff of abusing his four children, and Ms. Porter was assigned to investigate. *Id.* at ¶ 38. On November 18, 2016, while the fourth referral was pending, Roxanne filed for a DVRO against plaintiff. *Id.* at ¶ 39. In the request for the VRO, Roxanne stated,

> I am fearful that the children and I may suffer irreparable harm by the Petitioner [Suzuki] if immediate orders are not granted. CFS investigator SUZY PORTER stated I must request that our children be removed from Petitioner's care. A CFS report is supposed to follow but I do not know if/when that will occur. However this cannot wait as the [sic] me and the children are in danger.

Baker Decl., Ex. A at A-021 (Dkt. No. 20-2).[5] Roxanne stated that "Suzy Ms. Porter has warned me

---

[4] The FAC does not state who made the referral. However, based upon statements in Roxanne's November 2016 request for a DVRO, it appears that Roxanne initiated this referral and the subsequent referrals.

[5] Defendants request judicial notice of various state court orders and documents from

3

that if I did not take action to protect the children (over and above anxiously awaiting the results of our custody evaluation) that there is a great possibility that I would be found neglectful and the children could end up in the Juvenile Court system." *Id.* Roxanne also stated that "[t]hrough the CFS investigation I was just made aware that the Petitioner had a DUI in 2012 and had a suspended license which I had no idea had occurred [and] [a]pparently he continued to drive the children with a suspended license." *Id.* at A-023. Roxanne also claimed that plaintiff drove the children while intoxicated, and that he committed numerous other acts of child and spousal abuse. *Id.* at A-021 to A-025. The same day, the state court issued a Temporary Restraining Order ("TRO") that temporarily granted Roxanne legal and physical custody of the children and prohibited plaintiff from having contract with the children until December 2016, the date scheduled for a hearing regarding Roxanne's request for a DVRO.

Plaintiff alleges that he has never been convicted of a DUI, that his license has never been suspended, and that he has never driven the children while intoxicated. FAC ¶¶ 40-41. Plaintiff alleges that Ms. Porter lied to Roxanne about him having a DUI and a suspended license, lied about him driving the children while intoxicated, and that Ms. Porter fabricated evidence showing that he had a DUI and suspended license. *Id.* at ¶ 39. As support for this allegation, plaintiff cites deposition testimony that Ms. Porter and Roxanne provided in the state family court litigation, which is attached as exhibits to the FAC. Roxanne testified that Ms. Porter informed her that plaintiff had a DUI and that his license was suspended, and that she was "presented" with a document (presumably by Ms. Porter) showing that plaintiff had a DUI and that his license was suspended. Dkt. No. 16-2 at 408-09 (Roxanne's Depo.). Ms. Porter testified that she told Roxanne that she "found a DUI on the police reports" but did not know whether plaintiff actually had a DUI because the reports were confusing, and that she asked Roxanne "if she was aware that he ever had a DUI" because Ms. Porter was "concerned if she was letting him drive in the car with them while he was drinking." Dkt. No. 16-3 at 157, 258 (Ms. Porter's Depo.).

---

plaintiff's family court proceedings. Plaintiff does not object. The court orders and other documents are referenced in the FAC and the Court find sit appropriate to GRANT defendants' request for judicial notice.

4

On November 28, 2016, Ms. Porter met with plaintiff and his aunt, Linda Haley. FAC ¶ 42. The FAC alleges that at this meeting, Ms. Porter informed plaintiff that she "was planning to substantiate abuse" against plaintiff's adopted child and Ms. Porter threatened plaintiff not to challenge her findings or "things will get worse." *Id.* Plaintiff alleges that on November 30, 2016, Ms. Porter prepared an investigation report that found that plaintiff abused his adopted child but not his biological children. *Id.* at ¶ 43. The FAC alleges that "after being informed that [plaintiff] was challenging her findings that he abused his one (1) adopted child, [Ms. Porter] made good on her threat that 'things will get worse' for [plaintiff]." *Id.* at ¶ 44. "Specifically, on February 6, 2017, [Ms. Porter] amended her investigation report, dated November 30, 2016, to now substantiate abuse against [plaintiff] for all three (3) of his minor biological children as well." *Id.* After plaintiff received Ms. Porter's amended report, which was now dated February 6, 2017, he filed for a grievance hearing with CFS to challenge Ms. Porter's findings. *Id.* at ¶ 46. The grievance hearing was scheduled for September 22, 2017. *Id.* at ¶ 49.

Meanwhile, on December 6, 2016, the Contra Costa County Superior Court granted plaintiff's request for a continuance of the hearing on the request for the DVRO to allow plaintiff time to conduct discovery and prepare for the hearing. Dkt. No. 20-3 (State Court Order on Request to Continue Hearing). The court scheduled the hearings for March 9 and March 10, 2017.[6] *Id.* Additionally, the court ordered that the November 18, 2016 TRO would remain in effect until the end of the DVRO evidentiary hearings. *Id.* While the original TRO prohibited plaintiff from having any contact with his children, the December 2, 2016 order modified the TRO to grant plaintiff two hours a week of professionally supervised visitation with his children. *Id.*

The FAC alleges that on March 16, 2017, Ms. Porter's "corrupt and violent past was exposed" by Daniel Borenstein in an *East Bay Times* article entitled "County Hired Social Worker With Domestic Violence History." FAC ¶ 47. By April 4, 2017, Ms. Porter was no longer employed by the County. *Id.* at ¶ 48.

The FAC alleges that on September 14, 2017, one week before the scheduled grievance

---

[6] The evidentiary hearings were ultimately held on March 9, March 10, March 21, April 28, June 13, and October 16, 2017. Dkt. No. 16-4 at 5 (Transcript of Superior Court Proceedings).

5

hearing with CFS, the County reversed Ms. Porter's abuse findings against plaintiff as to all of the children. *Id.* at ¶ 50. The FAC also alleges that the County mailed a letter to plaintiff stating that all abuse is no longer substantiated against him "due to a change in the state of the evidence and unavailability of witness." *Id.*

On October 18, 2017, after multiple days of evidentiary hearings on Roxanne's DVRO request, the court ordered that a permanent DVRO be issued and remain in effect against plaintiff until May 18, 2018. FAC, Ex. D at 11 (Transcript) (Dkt. No. 16-4). The DVRO limited plaintiff to two three-hour visits per week with his biological children and no visits with his adopted son. *See* Baker Decl., Ex. E (Oct. 18, 2017 Minute Order) (Dkt. No. 20-6). According to the court transcript, the court "found that there is enough to issue a restraining order, because even if it was nothing but that swimming-pool incident,[7] that you were clearly, I mean the description is it as out of control. You were drunk, you were irritating – it was described as extremely awkward by one of the witnesses. You were disturbing [Roxanne's] peace." Dkt. No. 16-4 at 10:21-11:2. The court did

---

[7] The following description of the swimming pool incident" is taken from the Court of Appeal's decision affirming the trial court:

> Sometime in the spring of 2016, one of the Suzuki children was competing in a swim meet. Jeanine Dias, a friend of the Suzukis, and one of the third parties on whose testimony the trial court specifically relied, was present and testified that Eisho arrived after the rest of the family, carrying a beer. He was "pushy" towards Roxanne, following her around and demanding that she pay attention to him. He said, "Kiss me, Roxanne" and told the children, "Tell her to kiss me." Dias reported that the children wanted Roxanne "to just do it," which she said, "[v]ery quickly." Dias said, "It was an awkward day." After the meet, the Suzuki family went to a birthday party for Dias's grandson at a restaurant. Dias testified that Eisho did not appear drunk at the swim meet, but seemed drunk at the party.
>
> The child competing in the swim meet testified that Eisho arrived at the meet with a beer in his hand and one or two in his back pockets. He testified that Eisho caused a scene by telling Roxanne, "Kiss me now," and then raising his voice. When they arrived at the restaurant for the party, Eisho got out of the car and threw a bottle on the ground, where it shattered.
>
> Roxanne testified that Eisho arrived late at the swim meet with at least two beers, drank beer at the meet, and asked her to kiss him "a lot." He was yelling, she and the children were embarrassed, and she tried to pacify him. She testified that Eisho acted very drunk at the party that day, "being obnoxious," and yelling and following her around. She said she tried to avoid him without making a scene.

FAC, Ex. F at 4-5 (Dkt. No. 20-7).

1  not find that plaintiff abused the children, and the court did not address Roxanne's allegations that
2  plaintiff had a DUI or a suspended license. *See id.* at 9-10.

On February 25, 2019, the Court of Appeal of the State of California, First Appellant District affirmed the issuance of the DVRO against plaintiff. FAC, Ex. F (Dkt. No. 20-7). According to the Court of Appeal, the trial court did not abuse its discretion, and that "the evidence supports a conclusion that by harassing and pursuing Roxanne at the swim meet and the following party, [plaintiff] engaged in conduct that justifies the imposition of a restraining order." *Id.* at 6.

On May 3, 2019, the Court held a hearing on defendants' motion to dismiss the FAC and then issued an order granting in part and denying in part the motion with leave to amend. Plaintiff did not amend the complaint by June 7, 2019, the deadline set by the Court. Defendants filed an answer to the FAC and now move for judgment on the pleadings.

## LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings is "functionally identical" to Rule 12(b)(6) motion to dismiss and "the same standard of review applies to motions brought under either rule." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011) (internal quotation marks and citations omitted); *see also United States v. In re Seizure of One Blue Nissan Skyline Auto., & One Red Nissan Skyline*, 683 F. Supp. 2d 1087, 1089 (C.D. Cal. 2010) ("The standard for assessing a Rule 12(c) motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss."). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). A complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6) or Rule 12(c). To survive either motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a Rule 12(b)(6) motion−and Rule 12(c) motion as well−a district court must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the

plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**DISCUSSION**

In its prior order on defendants' motion to dismiss, this Court ordered as follows: (1) that plaintiff stated a claim against Ms. Porter for violation of plaintiff's Fourteenth Amendment rights, Dkt. No. 31 at 9; (2) that plaintiff failed to state a claim against defendants for a Fourth Amendment violation because the Fourth Amendment was not applicable, *id.;* (3) that, for the purposes of surviving a motion to dismiss, plaintiff successfully stated a claim against the County for hiring Ms. Porter, since plaintiff adequately alleged both that Ms. Porter committed an underlying constitutional violation and that there was a sufficiently close link between the County's allegedly inadequate screening of Ms. Porter and the violation, *id.* at 12-13; and (4) that, except for hiring Ms. Porter, plaintiff did not state any other *Monell* claims against the County for its policies, customs or practices. *Id.* at 13-14.

In support of their instant motion, defendants argue plaintiff fails to state a claim under § 1983 for three reasons: (1) the alleged fabricated evidence by Ms. Porter was not material to the issuance of the DVROs; (2) Ms. Porter is entitled to qualified immunity; and (3) there was no underlying constitutional violation by Ms. Porter and no sufficiently close nexus between Ms. Porter's alleged misconduct and the alleged constitutional violation by the County hiring Ms. Porter. *See* Def.'s Mot. at 2 (Dkt. No. 38). For the reasons set forth below, the Court disagrees.

**I. Causation and Materiality**

Defendants assert the allegedly fabricated evidence was not "material" to the issuance of the November 18, 2016 and December 6, 2016 DVROs, and therefore did not cause plaintiff's loss of parental rights. *Id.* at 6. Plaintiff maintains that the FAC contains sufficient facts to support the materiality of Ms. Porter's false allegations and the effect of her amended report. Pl.'s Opp. at 7

8

(Dkt No. 40).

"The Fourteenth Amendment prohibits the deliberate fabrication of evidence by a state official." *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017); *see also Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010) ("[A]n interviewer who deliberately mischaracterizes witness statements in her investigative report . . . commits a constitutional violation."). "[T]o prevail on a claim of judicial deception in a child abuse or custody proceeding, a plaintiff must show that '(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty.'" *Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018) (quoting *Spencer*, 857 F.3d at 798). "To establish the second element of causation, the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the 'proximate cause' or 'legal cause' of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question." *Id.*

To support a § 1983 claim of judicial deception, a plaintiff must show the defendant deliberately or recklessly made false statements or omissions that were material to the constitutional injury. *See KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004) (citing *Galbraith v. Cty of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002)). Materiality is a question of law for the court to decide. *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002).

Defendants contend the test for determining whether false allegations are material is to purge those statements and determine whether what is left justifies the *issuance* of the DVROs. *See* Def. Mot. at 8 (Dkt. No. 38). Defendants cite to several cases employing that standard and then argue Roxanne's declaration shorn of the alleged fabricated evidence was sufficient to support the issuance of the DVROs, including specific acts of abuse alleged by Roxanne and the swim meet incident. *Id.* at 9-10. While there may have been other grounds justifying the two DVROs, defendants' focus is misplaced. Plaintiff alleges Roxanne would not have *sought* the DVROs in the first place but for Ms. Porter's false allegations. Specifically, plaintiff alleges the following relevant facts:

> Roxanne Suzuki testified in a deposition for her DVRO that "she was coerced by Defendant SUZANNE PORTER to obtain a DVRO against [plaintiff] based upon fabricated and false statements [made by Ms. Porter], including but not limited to,

9

> that plaintiff had been convicted of a DUI, and plaintiff had driven their three (3) minor biological children while his license was suspended, and if Roxanne Suzuki did not request a DVRO, her children would be taken away from her…. [and that] Ms. Porter knowingly and fraudulently told Roxanne the false statements about plaintiff to induce Roxanne to file for DVRO against plaintiff in order for Roxanne to obtain an advantage over plaintiff in obtaining greater custody of their children.

FAC ¶¶ 39-41 (Dkt No. 16). Accepting the FAC's factual allegations as true, and drawing all reasonable inferences in favor of plaintiff, the alleged fabricated evidence is material because without it Roxanne would not have *sought* the DVROs against plaintiff.

Accordingly, the Court concludes plaintiff has stated sufficient facts under §1983 to support a claim that Ms. Porter deliberately or recklessly made false statements or omissions that were material to plaintiff's loss of parental rights.

## II. Qualified Immunity

Defendants assert plaintiff's claims should be dismissed because Ms. Porter is entitled to qualified immunity because "it was not clearly established that a Fourteenth Amendment fabricated evidence claim could be predicated upon the submission of the allegedly fabricated evidence by a private party in private litigation." Def.'s Mot. at 11 (Dkt. No. 38). In response, plaintiff argues his constitutional rights to familial association and to be free from judicial deception were clearly established at the time of Ms. Porter's alleged misconduct. Pl.'s Opp. at 9 (Dkt. No. 40).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). The inquiry of whether clearly established law is violated turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* at 243-44 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "In civil rights cases, if an officer submitted an affidavit with statements he knew to be false or would have known were false had he not recklessly disregarded the truth, he could not be said to have acted in an objectively

10

reasonable manner, and the shield of qualified immunity [is] lost." *Hervey v. Estes*, 65 F.3d 784, 788 (9th Cir. 1995) (internal quotation marks and citation omitted). In the context of a child abuse proceeding, "the constitutional right to be free from the knowing presentation of false or perjured evidence is clearly established." *Greene v. Camreta*, 588 F.3d 1011, 1035 (9th Cir. 2009) (citing *Devereaux v. Perez*, 218 F.3d 1045 (9th Cir. 2000), *vacated and rev'd on other grounds*, 563 U.S. 592 (2011).

Defendants try to distinguish the present case from precedent by emphasizing no Supreme Court or Ninth Circuit decisions have found a clearly established Fourteenth Amendment right to be free from fabricated evidence when a *private party* used the alleged fabricated evidence in a private proceeding. Def.'s Mot. at 12 (Dkt. No. 38). Defendants argue Fourteenth Amendment violations arise when the state official both falsifies and *personally* uses the fabricated evidence. *Id.* at 13. Defendants also argue the fabricated evidence cannot be used in a purely private action, i.e. a non-state-initiated civil proceeding, for the § 1983 claim to withstand qualified immunity. *Id.* at 14. The Court is unpersuaded.

In *Costanich*, the court held that "going forward, reasonable government officials are on notice that deliberately falsifying evidence in a child abuse investigation and including false evidentiary statements in a supporting declaration violates constitutional rights where it results in the deprivation of liberty or property interests, be it in a criminal or civil proceeding." *Costanich*, 627 F.3d at 1114. Defendants urge the Court to interpret that case such that qualified immunity is only lost if a government official both fabricates evidence *and* personally uses the fabricated evidence. Def.'s Mot. at 12 (Dkt No. 38). Defendants' argument contradicts the Supreme Court's directive that "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" but does not protect "the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A reasonable social worker knows it is illegal to deliberately fabricate evidence and use the fabricated evidence to coerce someone into filing a DVRO.

Therefore, Ms. Porter is not entitled to qualified immunity. Based on the findings above, the Court concludes plaintiff has stated a claim against Ms. Porter under § 1983 for violation of his

11

Fourteenth Amendment rights.

### III. Requisite Nexus for the *Monell* Claim

Lastly, defendants urge the Court to dismiss plaintiff's *Monell* claim against the County because: (1) there is no underlying Fourteenth Amendment violation by Ms. Porter; and (2) plaintiff's allegations do not establish a close nexus between the alleged constitutional violations and the County's decision to hire Ms. Porter. Def.'s Mot. at 15 (Dkt. No. 38). The Court has addressed the first prong of the argument above, finding plaintiff has stated a claim against Ms. Porter. For the second prong, in its prior order, this Court found a sufficiently close link between the alleged inadequate screening and the constitutional injury to state a claim against the County. *See* Dkt. No. 31 at 13. The Court so finds again for the same reasons outlined in its previous order. *Id*.

Accordingly, the Court concludes that plaintiff has stated a *Monell* claim against the County for violation of his Fourteenth Amendment rights.

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings is DENIED.

**IT IS SO ORDERED**.

Dated: August 8, 2019

SUSAN ILLSTON
United States District Judge